LYNN LOPA *v.* BRINKER INTERNATIONAL, INC., ET AL.
(AC 29324)

Bishop, Gruendel and Borden, Js.

Argued October 31—officially released December 30, 2008

*Matthew E. Dodd,* for the appellant (plaintiff).

*J. Sarah Posner,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant attorney general, for the appellee (defendant second injury fund).

*Opinion*

BISHOP, J. In this workers' compensation case, this appeal calls on the court to determine whether the

United States Postal Service is an "employer" within the Connecticut workers' compensation scheme so as to require the inclusion of postal wages in calculating the total disability payments due to a postal service employee who suffers a compensable injury in the course of concurrent employment. Because we conclude that the United States Postal Service is not an employer within the ambit of the Connecticut Workers' Compensation Act (act), General Statutes § 31-275 et seq., we affirm the decision of the workers' compensation review board.

The relevant facts are not in dispute. On July 13, 2004, the plaintiff, Lynn Lopa, sustained a compensable injury to her lower back arising out of her employment with the defendant Brinker International, Inc.[1] On the date of the injury, she worked for the defendant, Timothy's Tavern and the United States Postal Service. The trial commissioner (commissioner) concluded that the compensation rate should be calculated on the basis of the plaintiff's concurrent earnings with the defendant and Timothy's Tavern.[2] The commissioner rejected the

---

[1] Liberty Mutual Group, Inc., and the second injury fund are also defendants in this action. For convenience, we refer in this opinion to Brinker International, Inc., as the defendant.

[2] General Statutes § 31-310 (a) provides in relevant part: "For the purposes of this chapter, the average weekly wage shall be ascertained by dividing the total wages received by the injured employee from the employer in whose service the employee is injured during the fifty-two calendar weeks immediately preceding the week during which the employee was injured, by the number of calendar weeks during which, or any portion of which, the employee was actually employed by the employer . . . . Where the injured employee has worked for more than one employer as of the date of the injury and the average weekly wage received from the employer in whose employ the employee was injured, as determined under the provisions of this section, are insufficient to obtain the maximum weekly compensation rate from the employer under section 31-309, prevailing as of the date of the injury, the injured employee's average weekly wages shall be calculated upon the basis of wages earned from all such employers in the period of concurrent employment not in excess of fifty-two weeks prior to the date of the injury, but the employer in whose employ the injury occurred shall be liable for all medical and hospital costs and a portion of the compensation

plaintiff's assertion that the United States Postal Service wages should be included in her average weekly wage on the ground that the federal government is not an employer within the meaning of the act. The workers' compensation review board (board) affirmed the commissioner's decision and this appeal followed.[3]

We begin with a brief overview of the purpose, relevant provisions and relevant jurisdictional confines of the act. "The purpose of the workmen's compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer. . . . The Workers' Compensation Act compromise[s] an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation." (Citation omitted; internal quotation marks omitted.) *Panaro* v. *Electrolux Corp.*, 208 Conn. 589, 598–99, 545 A.2d 1086 (1988). Our Supreme Court has "observed that the workers' compensation commission, like any administrative body, must act strictly within its statutory authority . . . . It cannot modify, abridge, or otherwise change the statutory provisions under which it acquires authority unless the statutes expressly grant it that power. . . . A commissioner may exercise jurisdiction to hear a claim only under the precise circumstances and in

rate equal to seventy-five per cent of the average weekly wage paid by the employer to the injured employee, after such earnings have been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contribution Act made from such employee's total wages received from such employer during the period of calculation of such average weekly wage, but not less than an amount equal to the minimum compensation rate prevailing as of the date of the injury. The remaining portion of the applicable compensation rate shall be paid from the Second Injury Fund upon submission to the Treasurer by the employer or the employer's insurer of such vouchers and information as the Treasurer may require. . . ."

[3] The second injury fund, which became a party to this action due to its potential liability for the concurrent employment portion of the compensation due to the plaintiff, is the sole appellee.

the manner particularly prescribed by the enabling legislation. . . . [I]t is settled law that the commissioner's jurisdiction is confined by the [act] and limited by its provisions." (Citations omitted; internal quotation marks omitted.) *Discuillo* v. *Stone & Webster*, 242 Conn. 570, 576, 698 A.2d 873 (1997). "The parties cannot confer jurisdiction upon the commissioner by agreement, waiver or conduct." *Kinney* v. *State*, 213 Conn. 54, 60, 566 A.2d 670 (1989). "The [act] is not triggered by a claimant until he brings himself within its statutory ambit." (Internal quotation marks omitted.) Id., 59. "Although the Workers' Compensation Act should be broadly construed to accomplish its humanitarian purpose . . . its remedial purpose cannot transcend its statutorily defined jurisdictional boundaries." (Citations omitted; internal quotation marks omitted.) Id., 58–59.

The dispositive issue in the plaintiff's appeal is whether the United States Postal Service, which is "an independent establishment of the executive branch of the Government of the United States"; 39 U.S.C. § 201; falls within the definition of "employer" under the act. Whether the postal service may be an employer under the act presents a question of statutory interpretation over which our review is plenary. See *Rivers* v. *New Britain*, 288 Conn. 1, 10, 950 A.2d 1247 (2008). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results,

extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." *Rivers* v. *New Britain*, supra, 10–11.

Section 31-275 (10) of the act defines "employer" as "any person, corporation, limited liability company, firm, partnership, voluntary association, joint stock association, the state and any public corporation within the state using the services of one or more employees for pay, or the legal representative of any such employer . . . ." General Statutes § 31-275 (10). Both parties agree, as does this court, that the only portion of the definition of "employer" that the postal service might satisfy is "public corporation within the state." Because the meaning of a "public corporation within the state" is not readily ascertainable from the language of the statute, we turn to other sources for explication.

The definition of employer under § 31-275 (10) has remained essentially unchanged since the act's enactment in 1913.[4] During the committee hearings on the bill that became chapter 138 of the 1913 Public Acts, professor Willard C. Fisher, an economist at Wesleyan University who had been engaged by the standing committees on judiciary and labor to assist in drafting the

---

[4] Originally, the act defined "employer" as "any natural person, corporation, firm, partnership, or joint stock association, the state, and any public corporation within the state using the services of another for pay; it includes also the legal representative of any such employer." Public Acts 1913, c. 138, part B, § 43. The scope of this definition subsequently was amended to change "any natural person" to "any person"; Public Acts 1915, c. 288, § 22; and to include "voluntary association"; Public Acts 1921, c. 306, § 11; and "limited liability company"; Public Acts 1995, No. 95-79, § 117.

act, remarked that "the law ought to be as wide as possible in its scope; there ought to be no employment left out that can practicably be included." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1913 Sess., p. 197. Fisher stated further that "there is no good reason for excluding employment of public corporations; I mean truly public corporations, the state, the city and the like." Id., p. 205.

Black's Law Dictionary provides one definition of a "public corporation" as: "A corporation that is created by the state as an agency in the administration of civil government. . . . A government-owned corporation that engages in activities that benefit the general public . . . ." Black's Law Dictionary (7th Ed. 1999). These definitions are consistent with our case law. See *Norwich* v. *Housing Authority*, 216 Conn. 112, 121, 579 A.2d 50 (1990); *Housing Authority* v. *Dorsey*, 164 Conn. 247, 251, 320 A.2d 820 (housing authority is public corporation created by municipality to exercise certain delegated sovereign powers), cert. denied, 414 U.S. 1043, 94 S. Ct. 548, 38 L. Ed. 2d 335 (1973); *Local 530, AFSCME, Council 15* v. *New Haven*, 9 Conn. App. 260, 262, 518 A.2d 941 (1986) (water authority created as public corporation to provide and assure provision of adequate supply of pure water at reasonable cost).

Analogously, the United States Postal Service was created by the federal government for a public purpose. Therefore, it appears to meet a definition of a "public corporation." And, if we attribute "within the state" with its ordinary meaning in regard to geography,[5] we could conclude, as a matter of pure linguistics, that the United States Postal Service fits into the definition of "employer" under § 31-275 (10). Such an interpretation

[5] See *Cleveland* v. *U.S. Printing Ink, Inc.*, 21 Conn. App. 610, 575 A.2d 257 (1990), aff'd, 218 Conn. 181, 588 A.2d 194 (1991), in which the court appears to have fastened on the term "within the state" as connoting geography.

would be particularly desirable in this case, from the plaintiff's viewpoint, because if the plaintiff had been employed full-time by virtually any other entity, her wages from that employment would have been used to calculate her compensation under General Statutes § 31-310. If we could apply this interpretation only to this case and, thus, only to § 31-310, the second injury fund would be implicated, not the postal service or the federal government.

We cannot, however, interpret the term "employer" in a vacuum or as it relates solely to § 31-310, which is only one portion of the workers' compensation scheme. When interpreting the definition of "employer," we must be mindful that the definition set forth in § 31-275 (10) applies to the entire statutory scheme, and not merely to § 31-310. "The entire statutory scheme of the [act] is directed toward those who are in the employer-employee relationship as those terms are defined in the act and discussed in our cases. That relationship is threshold to the rights and benefits under the act . . . ." (Internal quotation marks omitted.) *Vanzant* v. *Hall*, 219 Conn. 674, 678, 594 A.2d 967 (1991). Thus, in determining who falls within the ambit of "employer" under § 31-275 (10), we must ensure that that definition may be applied consistently throughout the entire act because we cannot have different meanings of the word "employer" for different parts of the act.

There are many provisions in the act that impose statutory requirements on employers.[6] Because the postal service is part of the federal government, and because the federal government has not expressly consented to the jurisdiction of our act, we do not have

---

[6] See, e.g., General Statutes § 31-284 (regarding employer proving solvency and financial ability to pay compensation benefits, requiring the employer to file with the insurance commissioner guaranteeing the performance of his obligations, and by insuring against any such risks; sanctions for failure to comply with the provisions of this statute).

the authority to require the federal government to comply with our state statutes. See *United States* v. *Mitchell,* 445 U.S. 535, 538, 100 S. Ct. 1349, 63 L. Ed. 2d 607 (1980). Accordingly, because the term "employer" could not include the federal government for purposes of those provisions of the act that require statutory compliance, neither can it be so for § 31-310. To hold otherwise would impermissibly posit two different meanings of "employer" to be used throughout one uniform statutory scheme.[7]

In light of the foregoing, we conclude that the United States Postal Service is not an employer within the meaning of § 31-275 (10) and, accordingly, that the board properly affirmed the commissioner's determination that the plaintiff's postal wages should not be used in calculating her compensation benefits under § 31-310.[8]

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.

---

[7] To the extent that the statute creates an anomaly that results in a unique unfairness to the plaintiff, its correction lies with the legislature and not with this court.

[8] We note that the board has reached the same result in other cases, with which we agree. See *Lemieux* v. *General Dynamics Corp./Electric Boat Division,* No. 2077, CRB-2-94-6 (October 5, 1995) (Connecticut National Guard not employer within meaning of act); *Chodkowski* v. *UTC/Pratt & Whitney,* No. 736, CRD-3-88-5 (December 18, 1989) (United States Army Reserve not employer within act). Employing similar reasoning, the board has rejected claims to include wages from the Mashantucket Pequot Tribal Nation so as to enhance compensation benefits. See *Bardales* v. *Christi Cleaning Service Corp.,* No. 5053, CRB-2-06-2 (December 21, 2006); *Hudgens* v. *Goldy's Restaurant,* No. 4997, CRB-2-05-9 (December 21, 2006).