# LYNN LOPA *v.* BRINKER INTERNATIONAL, INC., ET AL.
## (SC 18303)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.

Argued January 7—officially released May 25, 2010

*Matthew E. Dodd,* for the appellant (plaintiff).

*Yinxia Long,* assistant attorney general, with whom, on the brief, were *J. Sarah Posner,* assistant attorney general, *Richard Blumenthal,* attorney general, and *Thomas P. Clifford III,* assistant attorney general, for the appellee (defendant second injury fund).

*Opinion*

McLACHLAN, J. The sole question presented in this certified appeal is whether the United States Postal Service (postal service) is an employer for purposes of the workers' compensation act (act), General Statutes § 31-275 et seq., particularly in the context of General Statutes § 31-310 of the act, which sets forth the method for determining the average weekly wage of an employee who worked for more than one employer at the time of injury.[1] The plaintiff, Lynn Lopa,

---

[1] General Statutes § 31-310 provides in relevant part: "(a) For the purposes of this chapter, the average weekly wage shall be ascertained by dividing the total wages received by the injured employee from the employer in whose service the employee is injured during the fifty-two calendar weeks immediately preceding the week during which the employee was injured, by the number of calendar weeks during which, or any portion of which, the employee was actually employed by the employer, but, in making the computation, absence for seven consecutive calendar days, although not in the same calendar week, shall be considered as absence for a calendar week. . . . Where the injured employee has worked for more than one employer as of the date of the injury and the average weekly wage received from the employer in whose employ the injured employee was injured, as determined under the provisions of this section, are insufficient to obtain the maximum weekly compensation rate from the employer under section 31-309, prevailing as of the date of the injury, the injured employee's average weekly wages shall be calculated upon the basis of wages earned from all such employers in the period of concurrent employment not in excess of

appeals[2] from the judgment of the Appellate Court affirming the decision of the workers' compensation review board (board), which ruled that the postal service is not an employer as defined by § 31-275 (10)[3] of the act. *Lopa* v. *Brinker International, Inc.*, 111 Conn. App. 821, 823, 960 A.2d 1107 (2008). The plaintiff claims that the postal service is an employer for purposes of § 31-310 because it is a public corporation geographically located within the state of Connecticut. We affirm the judgment of the Appellate Court.

The Appellate Court summarized the relevant facts, which are not in dispute, as well as the relevant procedural history. "On July 13, 2004, the plaintiff . . . sustained a compensable injury to her lower back arising out of her employment with the [named] defendant Brinker International, Inc. [Brinker].[4] On the date of

fifty-two weeks prior to the date of the injury, but the employer in whose employ the injury occurred shall be liable for all medical and hospital costs and a portion of the compensation rate equal to seventy-five per cent of the average weekly wage paid by the employer to the injured employee, after such earnings have been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contribution Act made from such employee's total wages received from such employer during the period of calculation of such average weekly wage, but not less than an amount equal to the minimum compensation rate prevailing as of the date of the injury. The remaining portion of the applicable compensation rate shall be paid from the Second Injury Fund upon submission to the Treasurer by the employer or the employer's insurer of such vouchers and information as the Treasurer may require. . . ."

Section 31-310 was amended in 2005; see Public Acts 2005, No. 05-199, § 7; but those amendments have no bearing on the merits of this appeal. For convenience, we refer to the current revision of the statute.

[2] We granted the plaintiff's petition for certification limited to the following issue: "Did the Appellate Court properly conclude that the . . . [p]ostal [s]ervice is not an employer under the . . . [a]ct?" *Lopa* v. *Brinker International, Inc.*, 290 Conn. 913, 964 A.2d 547 (2009).

[3] General Statutes § 31-275 (10) provides in relevant part: " 'Employer' means any person, corporation, limited liability company, firm, partnership, voluntary association, joint stock association, the state and any public corporation within the state using the services of one or more employees for pay, or the legal representative of any such employer . . . ."

[4] Liberty Mutual Group, Inc., and the second injury fund are also defendants in this action.

the injury, she worked for [Brinker], [J.] Timothy's Tavern and the . . . [p]ostal [s]ervice. The trial commissioner (commissioner) concluded that the compensation rate should be calculated on the basis of the plaintiff's concurrent earnings with [Brinker] and [J.] Timothy's Tavern. The commissioner rejected the plaintiff's assertion that the . . . [p]ostal [s]ervice wages should be included in her average weekly wage on the ground that the federal government is not an employer within the meaning of the act. The . . . board . . . affirmed the commissioner's decision . . . ." Id., 823–24.

The Appellate Court affirmed the decision of the board, concluding that the postal service is not an employer for purposes of the act. Id., 823. The court looked to § 31-275 (10) of the act, which defines " '[e]mployer' " to include "any person, corporation, limited liability company, firm, partnership, voluntary association, joint stock association, the state and any public corporation within the state using the services of one or more employees for pay, or the legal representative of any such employer . . . ." See *Lopa* v. *Brinker International, Inc.*, supra, 111 Conn. App. 826. The court relied on the fact that the postal service is part of the federal government and reasoned that, because the state cannot exercise jurisdiction over the federal government without its consent, the term employer in the act cannot include the postal service. Id., 828–29. Accordingly, the Appellate Court affirmed the decision of the board. Id., 829. This certified appeal followed.

The question of whether the postal service is an employer for purposes of § 31-310 turns on whether the postal service is encompassed in the term "public corporation within the state," as used in § 31-275 (10). This presents a question of statutory interpretation, over which we exercise plenary review. *Tayco Corp.* v. *Planning & Zoning Commission*, 294 Conn. 673, 679,

986 A.2d 290 (2010). "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . .

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) Id.

We begin with the language of the statute. The list in § 31-275 (10) of entities that are considered an employer for purposes of § 31-310 includes any "corporation" and any "public corporation within the state . . . ." In order for the phrase "public corporation within the state" not to be superfluous, it cannot be included in the classification, "corporation . . . ." Neither the term "corporation" nor "public corporation within the state" is defined in the act. We are guided, however, by our prior interpretation of the statutory language. See *Hummel* v. *Marten Transport, Ltd.*, 282 Conn. 477, 501, 923 A.2d 657 (2007) ("[t]here is nothing in the legislative history to suggest that the legislature also intended to overrule every other case in which our courts, prior to the passage of § 1-2z, had interpreted a

statute in a manner inconsistent with the plain meaning rule, as that rule is articulated in § 1-2z"). In *Olivieri* v. *Bridgeport*, 126 Conn. 265, 278, 10 A.2d 770 (1940), this court, in interpreting the definitions of employee and employer in the act to determine whether the plaintiff's decedent had been an employee of the city of Bridgeport for purposes of the act, observed: "Public corporations have always been included within the scope of our act, no doubt because there is no substantial reason why their employees should be treated differently than employees in private industry. As applied to a public corporation, however, the spread of the expense of compensation is not the result of the working of economic laws of supply and demand, but is accomplished by reason of the fact that the cost becomes ultimately a charge upon the taxpayers." As the legislature has allowed this interpretation to stand for seventy years, we may presume legislative acquiescence in that interpretation. See, e.g., *Grieco* v. *Zoning Commission*, 226 Conn. 230, 233, 627 A.2d 432 (1993). Accordingly, "public corporation" as used in § 31-275 (10), signifies corporations organized for a public purpose such as municipalities and counties. We agree with the Appellate Court that this interpretation finds further support in the recognition by this court and the Appellate Court that housing and water authorities are public corporations. See *Lopa* v. *Brinker International, Inc.*, supra, 111 Conn. App. 827, citing *Norwich* v. *Housing Authority*, 216 Conn. 112, 121, 579 A.2d 50 (1990); *Housing Authority* v. *Dorsey*, 164 Conn. 247, 251, 320 A.2d 820 (housing authority is public corporation created by municipality to exercise certain delegated sovereign powers), cert. denied, 414 U.S. 1043, 94 S. Ct. 548, 38 L. Ed. 2d 335 (1973); *Local 530, AFSCME, Council 15* v. *New Haven*, 9 Conn. App. 260, 262, 518 A.2d 941 (1986) (water authority created as public corporation to provide and assure provision of adequate supply of pure water at reasonable cost).

Additionally, this interpretation is consistent with the legislative history relied upon by the Appellate Court, which bears repeating: "During the committee hearings on the bill that became chapter 138 of the 1913 Public Acts, professor Willard C. Fisher, an economist at Wesleyan University who had been engaged by the standing committees on judiciary and labor to assist in drafting the act, remarked that 'the law ought to be as wide as possible in its scope; there ought to be no employment left out that can practicably be included.' Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1913 Sess., p. 197. Fisher stated further that 'there is no good reason for excluding employment of public corporations; I mean truly public corporations, the state, the city and the like.' Id., p. 205." *Lopa* v. *Brinker International, Inc.*, supra, 111 Conn. App. 826–27. As the Appellate Court observed, this interpretation is also consistent with one definition of "public corporation as: A corporation that is created by the state as an agency in the administration of civil government. . . . A government-owned corporation that engages in activities that benefit the general public . . . . Black's Law Dictionary (7th Ed. 1999)." (Internal quotation marks omitted.) *Lopa* v. *Brinker International, Inc.*, supra, 827. All of this material provides support for the conclusion that the postal service could satisfy the meaning of the term public corporation.

Section 31-275 (10), however, does not refer to public corporations without qualification. It includes within the definition of employer only a "public corporation *within the state* . . . ." (Emphasis added.) General Statutes § 31-275 (10). The statute does not define the meaning of "within the state" as a qualifier of "public corporation" and the legislative history does not provide any guidance as to the meaning of the term. That is, there is no indication, either in the plain language of § 31-275 (10) or in its legislative history, as to whether

the term "within the state" refers to geographic location within the physical boundaries of the state or organized pursuant to and existing under the laws of the state. The Appellate Court declined to resolve this question, stating merely that "if we attribute within the state with its ordinary meaning in regard to geography, we could conclude, as a matter of pure linguistics, that the . . . [p]ostal [s]ervice fits into the definition of employer under § 31-275 (10)." (Internal quotation marks omitted.) *Lopa* v. *Brinker International, Inc.*, supra, 111 Conn. App. 827. The logical meaning of the phrase, however, is evident. A public corporation without some claim to being in some manner within the physical boundaries of the state could not be subject to the act, because it would not be within our jurisdiction. Accordingly, if we were to interpret "within the state" to refer to a presence within the state, the phrase would be rendered superfluous. "It is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous. . . . Because [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Internal quotation marks omitted.) *PJM & Associates, LC* v. *Bridgeport*, 292 Conn. 125, 138, 971 A.2d 24 (2009). The logical interpretation of the phrase "within the state" is that it limits public corporations that may be considered employers under the act to those that are organized and existing pursuant to the laws of this state.[5] See,

---

[5] We agree with the Appellate Court's conclusion in *Cleveland* v. *U.S. Printing Ink, Inc.*, 21 Conn. App. 610, 613–14, 575 A.2d 257 (1990), aff'd, 218 Conn. 181, 588 A.2d 194 (1991), that the phrase " 'within the state' " modifies *only* the term " 'public corporations' " and not the other terms in § 31-275 (10).

e.g., General Statutes § 33-1201 et seq. (authorizing creation of specially chartered corporations). Under this definition, the postal service is not "within the state . . . ."

The postal service was created and organized pursuant to federal law. The constitution of the United States, article first, § 8, clause seven, authorizes Congress "to establish Post Offices . . . ." Pursuant to its constitutional authority, Congress enacted the Postal Reorganization Act, which established the postal service as "an independent establishment of the executive branch of the Government of the United States . . . ." 39 U.S.C. § 201. Title 39 of the United States Code sets forth detailed rules for the organization of the postal service, including but not limited to the organizational structure, powers, duties and limitations of powers of the postal service. See 39 U.S.C. § 201 et seq. Thus, it is obvious that the postal service was not organized under or created pursuant to the laws of Connecticut, and therefore cannot be an employer, as defined by § 31-275 (10), for the purposes of calculating the plaintiff's average weekly wage pursuant to § 31-310.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.