******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

McDONALD, J., with whom MULLINS and KAHN, Js., join, dissenting. The majority's conclusion that legal process is "personally delivered" to a recipient when a sender transmits a copy of that process from a remote location via facsimile (fax) transmission to the recipient's place of business cannot be squared with the well established, and widely accepted, meaning of this phrase. Whether legal process may be delivered through such means, without evidence that it actually has been received by the recipient, has profound ramifications given the wide range of electronic forms of communication and delivery platforms that exist today. To be clear, the rationale utilized by the majority will apply not only to the transmittal of a petition for a new trial by fax machine—an increasingly obsolete technology—but would apply with equal force to the transmittal of (1) a complaint by text message, (2) a subpoena by a LinkedIn account, (3) a temporary restraining order by Facebook instant messenger, (4) an injunction by Twitter, (5) a protective order by WhatsApp, or (6) a property execution by e-mail.

Whether to bridge the digital divide between the operations of our court system and modern technological advancements in this area, and what limits might be necessary to protect the parties' interests, are undoubtedly matters for the legislature to address, not this court. Indeed, when the legislature has chosen to embrace alternative means for the delivery of legal process, it has demonstrated its ability to craft legislation that accomplishes that objective. Because I conclude that legislatively mandated "personal delivery" requires that the recipient be in actual possession of the legal process and because the petitioner failed to establish that the marshal was in actual possession of the process before the lapse of the statute of limitations, I respectfully dissent.

The following undisputed facts are relevant to the resolution of this appeal. The petitioner, Anthony Johnson, sought to file a petition for a new trial pursuant to General Statutes § 52-270 on the basis of newly discovered evidence. Donna Peat, the office manager for the petitioner's attorney, faxed the process for the petition for a new trial to Charles J. Lilley, a state marshal, for service at 4:59 p.m. on August 5, 2014.[1] The fax transmission report indicates that the fax was electronically received by the fax machine in Lilley's office on August 5 at 5:01 p.m.[2] The evidence also establishes that Lilley did not answer Peat's telephone call on August 5, and he had no recollection of whether he was in his office that day. Moreover, there is no evidence that Lilley responded on August 5 to Peat's voice mail. Lilley served the faxed copy of the process on August 6. In

sum, there is no evidence establishing that Lilley personally received the faxed process the day it was transmitted, and the majority does not claim otherwise. There is also no evidence of when Lilley received the original process, which the fax transmittal cover page indicated would be mailed.

I begin by noting my agreement with the applicable standard of review as set forth in the majority opinion. The text of General Statutes § 52-593a (a) provides that a cause of action will not be barred by an expiring statute of limitations "if the process to be served is *personally delivered* to a state marshal, constable or other proper officer within such time and the process is served, as provided by law, within thirty days of the delivery." (Emphasis added.) I agree with the majority's conclusion that § 52-593a (a) is ambiguous and, in accordance with General Statutes § 1-2z,[3] that extratextual sources may be considered in ascertaining the meaning of "personal delivery." See, e.g., *State* v. *Panek*, 328 Conn. 219, 238, 177 A.3d 1113 (2018). I disagree with the majority's conclusion, however, that the mere successful transmission of a fax satisfies the "personally delivered" requirement of § 52-593a.

I find the Appellate Court's decision in *Gianetti* v. *Connecticut Newspapers Publishing Co.*, 136 Conn. App. 67, 73, 44 A.3d 191, cert. denied, 307 Conn. 923, 55 A.3d 567 (2012), particularly helpful in ascertaining the meaning of " 'personal delivery.' " In analyzing § 52-593a, the Appellate Court explained that, "[a]lthough the plaintiff is permitted to mail the process to the marshal, the determinative standard is *when the marshal receives the process*, not when it is mailed." (Emphasis added.) Id. Specifically, the court explained that something is not "personally delivered" until it has been "received in person by" or has "come into the possession of" the receiving officer. Id., 74; see also *Zarillo* v. *Peck*, 33 Conn. Supp. 676, 679, 366 A.2d 1165 ("The use of the word 'personally' in [§ 52-593a (a)] makes it crystal clear that the process must be *received* by the officer within the limitations period . . . . [P]rocess which *came into the hands* of the deputy sheriff by mail was 'personally delivered' to him within the meaning of § 52-593a . . . ." (Emphasis added.)), cert. denied, 171 Conn. 731, 357 A.2d 515 (1976). Accordingly, in order to satisfy the "personal delivery" requirement of § 52-593a, the petitioner must establish that the marshal actually received the process in person prior to the expiration of the statute of limitations.[4]

The Appellate Court's reasoning is consistent with other statutes addressing service, which distinguish personal service from abode service.[5] General Statutes § 52-57 governs the manner of service of process in Connecticut and provides that "process in any civil action shall be served by *leaving a true and attested copy of it . . . with the defendant,* or at his usual place

of abode, in this state." (Emphasis added.) General Statutes § 52-57 (a); see also General Statutes § 52-54 ("[t]he service of a writ of summons shall be made by . . . leaving an attested copy thereof with [the defendant] or at his usual place of abode"). Leaving a copy of the original process with the defendant is commonly referred to as personal service. See *Jimenez* v. *DeRosa*, 109 Conn. App. 332, 339, 951 A.2d 632 (2008) ("[w]hen jurisdiction is based on *personal* or abode service, the matters stated in the return, if true, confer jurisdiction" (emphasis added; internal quotation marks omitted)). It is significant that, in Connecticut, personal service has been interpreted to mean hand delivery. See, e.g., *Black* v. *London & Egazarian Associates, Inc.*, 30 Conn. App. 295, 300, 620 A.2d 176, cert. denied, 225 Conn. 916, 623 A.2d 1024 (1993); see also *Weiss* v. *Glemp*, 127 Wn. 2d 726, 729–30, 903 P.2d 455 (1995) (en banc) (summons left on windowsill of rectory, four feet from defendant, did not comply with personal service requirements). This is consistent with the dictionary definition of "personal service." See Black's Law Dictionary (11th Ed. 2019) p. 1381 (defining "personal service" as "[a]ctual delivery of the notice or process to the person to whom it is directed"); see also American Heritage College Dictionary (4th Ed. 2007) p. 1039 (defining "personal" as "[d]one, made, or performed *in person*" (emphasis added)).

These service of process statutes also require that the marshal leave a true and attested copy of the original process with the defendant. See General Statutes §§ 52-54 and 52-57. The theoretical underpinning of service is that the marshal compares the original process to the copy that he is serving, thus certifying that it is a true and attested copy. See *City Lumber Co. of Bridgeport, Inc.* v. *Borsuk*, 131 Conn. 640, 646, 41 A.2d 775 (1945) ("To attest means 'to bear witness to . . . to affirm to be true or genuine.' *McGuire* v. *Church*, 49 Conn. 248, 249 [1881]."). Although it is not necessary for a "true and attested copy" of an original court document to be a "duplicate copy, i.e., a copy exact in every respect to the original," nonconformities of the copy compared to the original may be deemed inadequate service. *Crossroads Development, Inc.* v. *Planning & Zoning Commission*, 210 Conn. 1, 5, 553 A.2d 609 (1989). As such, the marshal must be able to compare the copy that he is serving to the original, which, in this case, was not even being mailed to the marshal until sometime after August 5. Permitting personal delivery to a marshal to be accomplished via fax does not afford the marshal the ability to certify that the document he is serving is a true and attested copy of the original because the document received via fax is itself a copy. See, e.g., *Cox* v. *Mid-Minnesota Mutual Ins. Co.*, 909 N.W.2d 540, 544 (Minn. 2018) (A "fax is '[a] method of transmitting over telephone lines an exact *copy* of a printing.' Fax, Black's Law Dictionary

[(10th Ed. 2014) p.726] . . . . *The actual document being faxed is not brought to a particular person or place.*" (Citation omitted; emphasis added.)).

The Appellate Court's reasoning in *Gianetti* is also consistent with case law from this court in which we held that a fax did not satisfy the personal delivery requirement of General Statutes § 31-321. See *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 291, 298, 819 A.2d 260 (2003). Specifically, we concluded that by faxing its decision to a party's attorney, the Workers' Compensation Commission did not comply with § 31-321, which requires notice to be given by "written or printed notice, *service personally* or by registered or certified mail . . . ." (Emphasis added.) See *Hatt* v. *Burlington Coat Factory*, supra, 291, 298. The majority's attempt to distinguish *Hatt* from the present case on the basis that § 31-321 uses the phrase "service personally," rather than "personally delivered" as in § 52-593a, is unpersuasive and is undermined by the fact that we used the terms "service personally" and "personal delivery" interchangeably and synonymously. See footnote 5 of this dissenting opinion. We explained in *Hatt* that the "language of § 31-321 indicates that the legislature considered only *personal delivery* and registered or certified letters as acceptable methods of *service*." (Emphasis added.) *Hatt* v. *Burlington Coat Factory*, supra, 295.

The trial court and courts from other jurisdictions have considered similar language and specifically rejected the argument that a fax transmission constitutes delivery. See, e.g., *Seibold* v. *Commissioner of Dept. of Motor Vehicles*, Superior Court, judicial district of New Britain, Docket No. CV-13-6019840-S (January 9, 2014) (faxing copy of administrative appeal did not satisfy either personal service or certified mail requirement of General Statutes § 4-183 (c) (1)); *Cox* v. *Mid-Minnesota Mutual Ins. Co.*, supra, 909 N.W.2d 546 ("personal delivery" is not satisfied by delivery via fax); *National Bank of Northern New York* v. *Grasso*, 79 App. Div. 2d 871, 871, 434 N.Y.S.2d 553 (1980) ("[p]ersonal delivery means 'in-hand delivery' "); see also *Firefighters Institute for Racial Equality* v. *St. Louis*, 220 F.3d 898, 903 (8th Cir. 2000) (transmitting subpoena by fax is insufficient to satisfy rule 45 (b) (1) of Federal Rules of Civil Procedure, which requires that service be made by "delivering" subpoena to person, because method of service needs to be one that ensures that subpoena was "placed in the actual possession or control of the person to be served"), cert. denied, 532 U.S. 921, 121 S. Ct. 1359, 149 L. Ed. 2d 288 (2001); *Mehrer* v. *Diagnostic Imaging Center, P.C.*, 157 S.W.3d 315, 321 (Mo. App. 2005) (transmitting subpoena via fax to nonparty was insufficient to constitute " 'delivery' " under state's rules of civil procedure); 62B Am. Jur. 2d 760, Process § 187 (2005) ("The term 'personal service' has been defined as the actual or direct delivery of a summons

or a copy thereof to the person to whom it is directed . . . . *The term does not include service by leaving a copy of the papers at the place of residence or abode of the defendant, nor does it include service by mail.*" (Emphasis added; footnotes omitted.)).

Moreover, courts recognize the significance of a legislative body's inclusion and exclusion of "personal delivery" language from a statute. For example, the Nevada Supreme Court concluded that a fax was adequate service in a case in which the relevant statute did not require personal service and, also, service via fax was statutorily permitted. See *Davis* v. *District Court*, 129 Nev. 116, 119–20, 294 P.3d 415 (2013). The court explained that, "[i]n legal usage, 'personal service' has a distinct meaning—'[a]ctual delivery of the notice or process to the person to whom it is directed.' Black's Law Dictionary [(7th Ed. Abridged 2000) p. 933]." *Davis* v. *District Court*, supra, 119. Significantly, the court acknowledged that, "[h]ad the [l]egislature intended to require personal service, it could have expressly done so as it has in other statutes," and, therefore, the court declined to engraft a "personal delivery" requirement onto the statute. Id.

In the absence of a definition for "personal delivery," the legislature directs us to apply the "commonly approved usage" of the words at issue, or, if they are technical words that have "acquired a peculiar and appropriate meaning in the law," they should be construed according to that technical meaning. General Statutes § 1-1 (a). Irrespective of whether we view "personal delivery" as having a common or technical meaning, the result is the same. It requires actual receipt by the recipient, not delivery to the recipient's place of business.[6]

I agree with the majority that § 52-593a is a remedial statute; see, e.g., *Nine State Street, LLC* v. *Planning & Zoning Commission*, 270 Conn. 42, 55, 850 A.2d 1032 (2004); and that remedial statutes "must be afforded a liberal construction in favor of those whom the legislature intended to benefit . . . ." (Citation omitted; internal quotation marks omitted.) *Dorry* v. *Garden*, 313 Conn. 516, 530, 98 A.3d 55 (2014). The legislative history makes clear that § 52-593a was intended to help a plaintiff preserve a cause of action by affording the marshal additional time to serve the process, not to afford the plaintiff additional time to deliver the process to the marshal. See 12 H.R. Proc., Pt. 7, 1967 Sess., p. 2798, remarks of Representative John W. Boyd ("[T]his bill is for the purpose of, in a small way, extending the statute of limitations of causes of action. It does so by providing that, in the event that the complaint or other process, *is personally delivered to the officer who will make service within the time limited by law,* that the period will be extended for [fifteen] days for the officer to make such service." (Emphasis added.)); see also

*Tayco Corp.* v. *Planning & Zoning Commission*, 294 Conn. 673, 682, 986 A.2d 290 (2010) (§ 52-593a "intended to prevent a party from losing the right to a cause of action because of untimely service on the part of the *marshal* by giving the marshal additional time in which to effect proper service on the party in question" (emphasis in original)). In the present case, because the petitioner failed to timely deliver the process to Lilley personally, he is not entitled to the protections of § 52-593a, which was not intended to save the plaintiff from his own tardy action.

Moreover, a statutory interpretation that frustrates the evident intent of the legislature is not permitted simply because we afford a liberal interpretation to remedial legislation. *Dorry* v. *Garden*, supra, 313 Conn. 531–32. The evidence overwhelmingly indicates that the legislature did not intend for electronic transmission alone to constitute "personally delivered" process. Permitting a petitioner to satisfy the "personal delivery" requirement of the statute, without establishing that the marshal personally received it, would undermine the legislative intent by rendering the word "personally" superfluous in violation of the "basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous. . . . Because [e]very word and phrase [of a statute] is presumed to have meaning . . . [a statute] must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Internal quotation marks omitted.) *Lopa* v. *Brinker International, Inc.*, 296 Conn. 426, 433, 994 A.2d 1265 (2010).

Although evidence of timely delivery of process to a marshal need not be by the statutorily directed endorsement, the plaintiff must establish by some other evidence that the marshal personally received the process. This is precisely the point made by this court in *Doe* v. *West Hartford*, 328 Conn. 172, 177 A.3d 1128 (2018). In *Doe*, we explained that, "permitting a plaintiff to prove timely delivery of process to a marshal by means other than the statutorily directed endorsement would not result in an unjust windfall but, rather, *assuming that timeliness could be shown by other evidence*, simply would enable the plaintiff to take advantage of a protection that the legislature sought to provide to him . . . ." (Emphasis added.) Id., 186. Here, Lilley's return is silent as to when it was received from the petitioner. Consequently, it does not comply with the provisions of § 52-593a (b).[7] Moreover, the petitioner failed to demonstrate by other evidence that Lilley had personally received the original process prior to the lapse of the statute of limitations.[8] Unlike in *Doe*, in which deposition testimony from the plaintiff's attorney established that the attorney spoke with the marshal the day that process

was retrieved from his office and that the marshal retrieved the process the day the statute of limitations expired, there is no such evidence in this case that Lilley actually received the process on August 5, 2014. See id., 189–91.[9] As such, Lilley did not have the documents necessary to make proper service by August 5.

Permitting delivery via fax opens the door to all manner of electronic delivery—including social media—because there is no rational way to draw the line at what electronic means are acceptable and which are not. This concern finds support in case law from other jurisdictions. When there is no statute or rule imposing a similar "personal delivery" requirement, courts have grappled with this issue in the context of e-mail and social media, including Facebook and Twitter postings. Typically, such methods of electronic delivery have been permitted when traditional methods of process have been exhausted without success, with special permission, or for international delivery. See *St. Francis Assisi* v. *Kuwait Finance House*, United States District Court, Docket No. 3:16-CV-3240-LB (N.D. Cal. September 30, 2016) (allowing service of process on international defendant via Twitter); *F.T.C.* v. *PCCare247 Inc.*, United States District Court, Docket No. 12 Civ. 7189 (PAE) (S.D.N.Y. March 7, 2013) (for sake of thoroughness, court authorized service of process via Facebook in addition to e-mail when all attempts to accomplish traditional service of process failed); *D.R.I.*, *Inc.* v. *Dennis*, United States District Court, Docket No. 03 Civ. 10026 (PKL) (S.D.N.Y. June 3, 2004) (permitting service by e-mail on defendant whose whereabouts unknown); *Baidoo* v. *Blood-Dzraku*, 48 Misc. 3d 309, 315–17, 5 N.Y.S.3d 709 (2015) (held that divorce summons can be served solely by private Facebook message to spouse's account); see also D. Stewart & A. Conley, "E-mail Service on Foreign Defendants: Time for an International Approach?," 38 Geo. J. Intl. L. 755, 764–72 (2007) (examining common threads in case law that permits e-mail service on foreign defendants).

Other courts have rejected the use of e-mail and social media for service of process. See, e.g., *Fortunato* v. *Chase Bank USA*, *N.A.*, United States District Court, Docket No. 11 Civ. 6608 (S.D.N.Y. June 7, 2012) (rejecting defendant's request to effectuate service of process via Facebook); *Lim* v. *Nojiri*, United States District Court, Docket No. 10-CV-14080 (E.D. Mich. June 27, 2011) ("neither service by fax or e-mail is sufficient to effect service of process under [rule 4 of the Federal Rules of Civil Procedure] or under Michigan state law"). It is important to note that several courts and scholars have raised various concerns about electronic service, including the problem of verifying whether and when such communications were opened or viewed. See, e.g., *Rio Properties, Inc.* v. *Rio International Interlink*, 284 F.3d 1007, 1018 (9th Cir. 2002) ("Despite our endorsement of service of process by [e-mail] in this case, we

are cognizant of its limitations. In most instances, there is no way to confirm receipt of an [e-mail] message.”); M. Schreck, “Preventing ‘You’ve Got Mail’‹ from Meaning ‘You’ve Been Served’: How Service of Process by E-mail Does Not Meet Constitutional Procedural Due Process Requirements,” 38 J. Marshall L. Rev. 1121, 1140 (2005) (Footnote omitted.) (listing “a multitude of other problems with permitting service of process by e-mail that contribute to the problem of confirming whether an e-mail was delivered or opened”); A. Shultz, comment, “Superpoked and Served: Service of Process via Social Networking Sites,” 43 U. Rich. L. Rev. 1497, 1525–26 (2009) (“the limitations [on service of process via Facebook] are more severe than those associated with e-mail,” including proving that “the person behind the profile contacted is actually the defendant”); C. Specht, “Text Message Service of Process—No LOL Matter: Does Text Message Service of Process Comport with Due Process?,” 53 B.C. L. Rev. 1929, 1955–59 (2012) (discussing problems with service of process via text message).

The numerous concerns arising in this context and the limitations to be imposed to protect both parties are properly left to the legislature. See *State* v. *Whiteman*, 204 Conn. 98, 103, 526 A.2d 869 (1987) (“[i]n areas where the legislature has spoken . . . the primary responsibility for formulating public policy must remain with the legislature”). When the legislature has chosen to adopt alternative means for the delivery of legal process, it has demonstrated its ability to craft legislation that accomplishes that objective. See, e.g., General Statutes § 52-52 (b) (publication of orders of notice of legal or judicial proceedings may be left with newspaper); General Statutes § 52-57 (e) (service of process on voluntary association made by, inter alia, mailing it by registered or certified mail, postage prepaid, to defendant’s last known address); General Statutes § 52-59d (b) (service of process outside of the United States may be made “upon such terms as the court deems reasonably calculated to give the defendant actual notice”); General Statutes § 52-62 (c) (service of process on a nonresident in action for negligent operation of motor vehicle may be made by, inter alia, mailing it registered or certified mail, postage prepaid, to defendant’s last known address); General Statutes § 52-64 (service of process in action against state may be made by sending process by certified mail, return receipt requested, to attorney general).[10] The decision to permit electronic delivery is one that requires the evaluation of various public policy considerations given the seemingly infinite possible electronic means of transmitting information such as e-mail, text, and social media platforms or applications. Our legislature could have, but chose not to, use open-ended language that would have left the matter to the courts to interpret. See *Marchesi* v. *Board of Selectmen*, 309 Conn. 608,

618, 72 A.3d 394 (2013) ("it is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so" (citation omitted; internal quotation marks omitted)); see also *Rio Properties, Inc.* v. *Rio International Interlink*, supra, 284 F.3d 1018 (explaining that e-mail service was properly ordered by District Court using its discretion under rule 4 (f) (3) of Federal Rules of Civil Procedure, which allows for service by *other means* not prohibited by international agreement).

In the present case, there is no evidence of when Lilley or anyone in his office actually received the fax, only that it had been received by the fax machine in Lilley's office at 5:01 p.m. on August 5, 2014.[11] See *Salley* v. *Board of Governors*, 136 F.R.D. 417, 419 (M.D.N.C. 1991) (Facsimile transmission is a "process of electronically sending an exact copy of an image, through telecommunications, between copying machines. There is no need for an operator to be continuously on duty at the place of reception."). Specifically, Lilley's return does not indicate when he received the process, and he does not recall whether he physically held the process in his hand or even whether he was at work on August 5, 2014. Peat attempted to call Lilley on August 5, but he did not answer. Indeed, there is no evidence that Lilley ever received the original process prior to serving the faxed copy of it on August 6. Given the transmittal cover letter's statement that the original would be mailed, it is highly unlikely that Lilley would have received it less than one day later. As a result, Lilley was not able to compare the copy of the fax that he was serving on the defendant to the original. Thus, the evidence does not establish that personal delivery was accomplished by August 5, 2014. Rather, the evidence only established that Lilley had actual possession of the faxed copy of the process on August 6, 2014, the day he served the process on the respondent and the day after the statute of limitations had expired. As we have explained, § 52-593a was "intended to prevent a party from losing the right to a cause of action because of untimely service on the part of the marshal by *giving the marshal additional time* in which to effect proper service . . . ." (Emphasis altered.) *Tayco Corp.* v. *Planning & Zoning Commission*, supra, 294 Conn. 682. Section 52-593a was not intended to give the party additional time, beyond the statute of limitations, to deliver the process to the marshal. See id., 686. Here, the petitioner did not establish that personal delivery to Lilley was accomplished before the expiration of the statute of limitations.

The parties agree that the petition would be time barred by General Statutes § 52-582 unless the process was "personally delivered" to Lilley by August 5, 2014. Thus, because I conclude that "personal delivery" requires that the recipient be in actual possession of

the original process and because the petitioner failed to establish that Lilley was in possession of either the faxed or original process before the lapse of the statute of limitations, I would affirm the judgment of the Appellate Court dismissing the action. Accordingly, I respectfully dissent.

[1] The transmittal cover page was addressed to "Debbie," not Lilley, and contained the following message: "Please make service of the attached ASAP. Also, please confirm receipt. *I will mail the originals.* Thank you. Donna." (Emphasis altered.) There is no indication in the record that either "Debbie" or Lilley ever confirmed the receipt of the transmission, that the original process was mailed, or that Lilley received the original process before he served the faxed copy of the process the next day. I observe that the fax cover page stated that the originals would be mailed and that the fax was transmitted at 4:59 p.m. Under such circumstances, it is inconceivable that Lilley received the original documents in time to serve them the following day. As such, the petitioner's attorney could not have provided Lilley, on a timely basis, with all the materials he needed to certify proper service.

[2] Although I do not agree with the majority that receipt at the recipient's office constitutes constructive possession and, in turn, personal delivery, such a theory would have to fail in the present case, in any event, in the absence of evidence that the marshal's ordinary business hours extended past 5 p.m. Though it is not controlling in this context, it is nevertheless informative that we regularly consider something delivered electronically after 5 p.m. as not delivered on that day. Indeed, our rules of practice provide that any filing sent electronically to the clerk's office that is received after 5 p.m. "shall be deemed filed on the next business day upon which such office is open." Practice Book § 7-17; see also *Real Estate Mortgage Network, Inc.* v. *Squillante*, 184 Conn. App. 356, 362, 194 A.3d 1262, cert. denied, 330 Conn. 950, 197 A.3d 390 (2018).

[3] General Statutes § 1-2z provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered."

[4] This reasoning is consistent with the legislative history of § 52-593a. See 12 S. Proc., Pt. 5, 1967 Sess., p. 2117, remarks of Senator John F. Pickett (savings statute is intended to remedy issue of when "a statute of limitation[s] is about to expire and the *sheriff get[s] a copy* of the writ from [counsel]" by allowing sheriff to serve it within extra time allotted (emphasis added)).

[5] In ascertaining the meaning of "personally delivered," I discern no principled distinction between the concepts of "personal delivery" and "personal service," or variations of those terms, such as "service personally." Perhaps more important, the majority does not offer a meaningful distinction, thereby leaving our trial courts to conjure one for themselves. Though the majority states that its holding is limited to the "discrete and unique issue" here, one is left to speculate why the issue is either discrete or unique.

Service is merely the formal delivery of legal process or notice. See Black's Law Dictionary (11th Ed. 2019) p. 1643 (service is "[t]he formal delivery of a writ, summons, or other legal process, pleading or notice to a litigant or other party interested in litigation"). The majority is correct that service of process must comport with due process but properly served process requires that the marshal certify that the document he or she is serving is a true and attested copy of the original process. See General Statutes §§ 52-54 and 52-57. This can only be accomplished if the marshal has the original process in hand. The personal delivery requirement of § 52-593a ensures that the marshal receives the original process. The majority does not address the fact that the marshal did not have the original process but, rather, had a replica of the original. The majority attempts to distinguish "service" from "delivery" on the due process principle of "actual notice," but does not explain how one who receives a fax, e-mail or text message containing a copy of the original process has "actual notice" of its contents. Additionally, the majority tries to divine some light between "personally served" and "personally delivered" by asserting that delivery to a marshal only serves as a "mechanism to effectuate service . . . ." But how is that legally or meaningfully different than the due process concern that one have "actual notice" of the original process? The majority opinion is silent on the question.

I look to related statutes, such as service of process statutes, because "[s]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law." (Internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 77–78, 836 A.2d 224 (2003); see also *Cox* v. *Mid-Minnesota Mutual Ins. Co.*, 909 N.W.2d 540, 545–46 (Minn. 2018) (concluding that fax transmission did not satisfy requirement of delivery to sheriff because, among other things, state's service of process rule of civil procedure did not allow for service via fax). It is the meaning of the adverb "personally," not the verbs "deliver" or "service," that is at issue in the present case and, as discussed further in this dissenting opinion, to satisfy a personal delivery requirement, the recipient must be in actual possession of the original legal process.

[6] Indeed, the legislature enacted § 52-593a as Public Acts 1967, No. 890, and the public act allowed for personal delivery to "an officer authorized to serve such process or . . . to *the office of* any sheriff . . . ." (Emphasis added.) The emphasized phrase, "the office of," was subsequently removed from the statute by the legislature. See Public Acts 2000, No. 00-99, §§ 116 and 138. As a result, had the legislature intended for delivery to the marshal's place of business to constitute personal delivery, it certainly would not have removed that language from the statute. See *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 618, 72 A.3d 394 (2013) (" 'it is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly' ").

[7] General Statutes § 52-593a (b) provides: "In any such case, the officer making service shall endorse under oath on such officer's return the date of delivery of the process to such officer for service in accordance with this section."

[8] The majority asserts that delivery via fax is distinguishable from delivery via mail because "the time, date, and success of a fax transmission are confirmed near instantaneously . . . ." This distinction misses the mark. Although it is true that the confirmation contained in the fax transmission report indicates when the fax was received by the machine, it does not indicate when the recipient personally received it. See *Coldwell Banker Commercial/Feist & Feist Realty Corp.* v. *Blancke P.W., L.L.C.*, 368 N.J. Super. 382, 393, 846 A.2d 633 (App. Div. 2004) ("Faxes do not afford the same certainty of delivery as certified mail or personal service, and do not provide a means to determine the actual recipient of the fax. . . . [T]he recipient of a fax is always a machine, not an individual.").

[9] I also note that the majority's conclusion that constructive possession of process by a serving officer is a sufficient substitute for actual possession, for purposes of saving late service, frustrates the intent of the legislature. The majority provides no support for this proposition and I can find none. Had the legislature intended for constructive possession to be the standard, it could have expressly done so as it has in other statutes. See, e.g., General Statutes § 12-392 (b) (4) (statutory language providing for "actual or constructive possession" of property); General Statutes § 54-33a (e) (same). As we have explained, "it is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so." (Citation omitted; internal quotation marks omitted.) *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 618, 72 A.3d 394 (2013).

Moreover, even if constructive possession was an appropriate substitute for actual possession, there is no evidence that the marshal was in constructive possession of the process on August 5, 2014, because there is no evidence that he was aware that process had been transmitted to his office. See *Connecticut National Bank* v. *Douglas*, 221 Conn. 530, 538–39, 606 A.2d 684 (1992) (describing constructive possession as knowingly having power and intention at given time to exercise dominion or control over something). Indeed, without at least a requirement that the marshal be aware that the process had been transmitted to his office, a petitioner could send the petition to the marshal at 11:59 p.m. the day the statute of limitations expires.

[10] We note that states that have permitted electronic delivery of process have done so by explicit statutory provisions. See, e.g., S.C. Code Ann. § 26-6-190 (C) (2007) (providing for e-mail service of process on corporations, partnerships, and unincorporated associations); S.C. Code Ann. § 26-6-195 (Supp. 2019) (allowing government agency to effect service of process by e-mail on any vendor, entity, or individual that governmental agency regulates or with which government does business); N.Y. C.P.L.R. § 308 (5) (McKinney 2010) (where traditional methods of service of process impracticable, court may direct service in any manner it deems likely to notify

defendant).

[11] I note that, unlike in *Doe*, in which deposition testimony from the plaintiff's attorney established that the attorney actually spoke with the marshal the day that process was retrieved from his office; *Doe* v. *West Hartford*, supra, 328 Conn. 189–91; the only evidence in the present case regarding the timing of receipt, rather than transmittal, of the process, was the fax transmission report. The report does not establish that anyone in the office actually received the process on August 5.

———————————————————